THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ECONOMY PREFERRED INSURANCE COMPANY, an Illinois corporation, <br><br> Plaintiff, <br><br> v. <br><br> ADAM RODGERS and APRIL RODGERS, husband and wife, and the marital community comprised thereof, <br><br> Defendant. | CASE NO. C18-1589-JCC <br><br> ORDER |

This matter comes before the Court on Plaintiff's motion for summary judgment (Dkt. No. 19). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

**I.     BACKGROUND**

**A.     The Policy**

Plaintiff issued Defendants Adam and April Rodgers an auto insurance policy that was in effect on August 10 and August 11, 2018. (Dkt. No. 14 at 4–12.) The policy includes the Washington Underinsured Motorists Coverage Endorsement ("UIM endorsement"). (*Id.* at 7–9.) The UIM endorsement provides coverage when "an insured is legally entitled to recover

[compensatory damages] from the owner or operator of an underinsured motor vehicle for [bodily injury] . . . sustained by an insured; and . . . caused by an accident arising out of owning, maintaining, or the use of an underinsured motor vehicle." (*Id.* at 7.) The UIM endorsement defines an underinsured motor vehicle as "a motor vehicle for which . . . the sum of the limits of the [bodily injury liability insurance policies] is less than the damages which the insured is legally entitled to recover." (*Id.*) The UIM endorsement does not modify the definition of "motor vehicle." (*Id.* at 7–9.) The policy provides the following definition for "motor vehicle":

> MOTOR VEHICLE means a land motor vehicle *designed for use mainly on public roads* other than:
>
> 1. a farm type tractor or farm equipment designed for use mainly off public roads, while not upon public roads;
> 2. a vehicle operated on rails or crawler-treads;
> 3. a self-propelled steam engine or traction engine;
> 4. a compactor type engineering vehicle used for the construction of roads or foundations; or
> 5. a vehicle used primarily as a residence, dwelling, premises, or place of business.

(*Id.* at 5–6.) (emphasis added)

The policy also includes the Washington Personal Injury Protection Endorsement ("PIP endorsement"). (*Id.* at 10–12.) The PIP endorsement provides that Plaintiff will "pay . . . benefits to an insured for loss and expense incurred because of [bodily injury] sustained by that insured and caused by an accident arising out of . . . use of an auto[.]" (*Id.* at 11.) The PIP endorsement modifies the definition of "auto" for the PIP endorsement only:

> AUTO means every motor vehicle designed for carrying ten passengers or less and used for transportation of persons. However, auto does not include a:
>
> 1. farm type tractor or *other self-propelled equipment designed for use principally off public roads*;
> 2. vehicle operated on rails or crawler-treads;
> 3. vehicle located for use as a residence;
> 4. moped;
> 5. motorcycle; or
> 6. motor-driven cycle.

(*Id.* at 10.) (emphasis added)

**B.     The Accident**

On August 10, 2018, Defendant April Rodgers was injured in an accident in Snohomish, Washington. (*See* Dkt. Nos. 1 at 4, 17 at 2, 20 at 9.) Ms. Rodgers was riding as a passenger in a 2017 Polaris Ranger XP 1000 Utility Vehicle ("UTV") driven by Dennis Thomas. (*Id.*). Thomas lost control of the vehicle, and Ms. Rodgers was ejected and suffered injuries. (*Id.*) The accident occurred in a field adjacent to Thomas Family Farms. (Dkt. No. 20 at 10.)

Defendants brought a claim under the PIP endorsement of the policy, and Plaintiff denied the claim on the basis that an all-terrain vehicle ("ATV") is not covered under the policy. (Dkt. Nos. 1 at 4–5, 14 at 36–37.) Defendants then brought a claim under the UIM endorsement. (Dkt. Nos. 1 at 5, 9 at 3.) Plaintiff brought this action for declaratory relief to determine whether there is coverage. (Dkt. No. 1.) Plaintiff moves for summary judgment on its claim for declaratory relief. (Dkt. No. 19 at 1.)

**C.     The Vehicle**

The vehicle involved in the accident is a 2017 Polaris Ranger XP 1000 EPS utility Vehicle. The owner's manual for the 2017 Polaris Ranger provides:

- This vehicle handles differently than other vehicles, such as cars, trucks or other off-road vehicles.
- The Ranger is an off-road vehicle. Familiarize yourself with all laws and regulations concerning the operation of this vehicle in your area.
- Do not allow operation on public roads (unless designated for off-highway vehicle access) — collisions with cars and trucks can occur.
- Plan for hills, rough terrain, ruts, and other changes in traction and terrain. Avoid paved surfaces.
- This vehicle is for off road use only. Never operate on public roads (unless marked for off-road use). Always avoid paved surfaces.
- The vehicle's tires are designed for off-road use only, not for use on pavement. . . . Avoid operating the vehicle on pavement.
- Never operate this vehicle on any public street, road or highway, including dirt or gravel roads (unless designated for off-highway use).

(Dkt. No. 20 at 17–26.)

Thomas purchased the vehicle from the dealer on December 29, 2016. (Dkt. 20 at 13, 30.)

The certificate of title for the vehicle provides, "This off-road vehicle is not intended for, and may not be registered for, on-road use." (Dkt. 20 at 30.) Simultaneous with the purchase, the dealer sold and installed for Thomas a turn-signal kit. (Dkt. No. 21-2 at 8.) Additionally, the dealer completed a Washington State Department of Licensing form titled "Wheeled All-Terrain Vehicle (WATV) Road Use Declaration." (Dkt. No. 20 at 33.) The form states that it is used to "certify and register a wheeled all-terrain vehicle (WATV) for public roadway use." (Dkt. 20 at 33.) It required that a dealer inspect and verify Thomas's vehicle was equipped with headlights, tail lights, brake lights, a horn, and other items. (Dkt. 20 at 33.) Thomas also signed an acknowledgment that he understood that the WATV was not manufactured for on-road use and has been modified for use on public roads. (*Id.*). It further required Thomas to acknowledge that if he were to remove any of the specified equipment, the vehicle would no longer be eligible for public road use. (*Id.*) Once the vehicle was modified, certified, and registered with the Washington Department of Licensing, it was legal to drive in Snohomish County on specifically designated county roads with a posted speed limit of 35 miles per hour or less (Dkt. 20 at 49–53.)

## II. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49.

Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B. Policy Coverage

This insurance coverage question is an issue governed by Washington law. Under Washington law, "[i]nsurance policies are to be construed as contracts, and interpretation is a matter of law." *State Farm Gen. Ins. Co. v. Emerson*, 687 P.2d 1139, 1141–42 (Wash. 1984). In construing the language of an insurance policy, a court must construe the entire contract as a whole. *Id.* "The court examines the terms of an insurance contract to determine whether under the plain meaning of the contract there is coverage." *Kitsap Cty. v. Allstate Ins. Co.*, 964 P.2d 1173, 1178 (Wash. 1998). "To avoid coverage, the insurer must . . . show the loss is excluded by specific policy language." *McDonald v. State Farm Fire & Cas. Co.*, 837 P.2d 1000, 1003–04 (Wash. 1992). If the language of an insurance contract is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists. *Pub. Util. Dist. No. 1 of Klickitat Cty. v. Int'l Ins. Co.*, 881 P.2d 1020, 1025 (Wash. 1994). Ambiguities must be resolved in favor of the insured. *Am. Star Ins. Co. v. Grice*, 854 P.2d 622, 625 (Wash. 1993).Washington courts have previously found ATV exclusions in auto insurance policies to be enforceable. *See, e.g.*, *Lake v. State Farm Mut. Auto. Ins. Co.*, 110 P.3d 806, 806 (2005).

In the present case, coverage under both the UIM and PIP endorsements depends on whether the policy excludes from coverage an accident involving a Polaris Ranger XL 1000 UTV. The UIM endorsement provides coverage for losses involving vehicles "designed for use mainly on public roads." (Dkt. No. 14 at 5.) The PIP endorsement provides coverage for vehicles designed for carrying ten passengers or fewer and used to transport people. (Dkt. No. 14 at 10.) The PIP excludes from coverage vehicles "designed for use principally off public roads." (Dkt.

No. 14 at 10.) Thus, under both endorsements, coverage hinges on the use for which the vehicle is designed. If the vehicle is principally or mainly designed for use off public roads, then it is excluded from coverage.

The owner's manual is the clearest evidence of the purpose for which the manufacturer designed the vehicle. The owner's manual states that it is an "off road vehicle." (Dkt. No. 20 at 17–26.) The manual states that the vehicle is "for off road use only," and warns the owner to "[n]ever operate [it] on public roads (unless marked for off road use)." (*Id.*) The manual also cautions the operator to avoid paved surfaces because the tires are designed for use off road, not on pavement. (*Id.*) The manual does contemplate use on public roads, specifically those roads that are not highways or that are marked for off-road use. (*Id.*) Overall, however, the owner's manual indicates the vehicle was *mainly* or *principally* designed for use off road.

An ambiguity exists in plain language of the phrase "designed for." *See Pub. Util. Dist. No. 1 of Klickitat Cty.*, 881 at 1025. It is unclear whether "designed for" encompasses only the design by the original manufacturer or whether it includes subsequent modifications. In this case, the vehicle was modified to make it legal to drive on public roads. The dealer installed a turn signal kit and certified the Washington Department of Licensing form that made it legal to drive on public roads. (Dkt. No. 20 at 33, 21-2 at 8.) However, even assuming that the policy's phrase "designed for" in the two endorsements encompasses Thomas's modification to make the vehicle "street legal," the redesigned vehicle was not "primarily" or "mainly" designed for use on public roads. (*See id.* at 17–26.) Therefore, Plaintiff's motion for summary judgment is GRANTED.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. No. 19) is GRANTED.

//

//

//

DATED this 16th day of October 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C18-1589-JCC
PAGE - 7